NOTICE

Decision filed 01/22/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 160423-U

NO. 5-16-0423

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Clay County. |
| | ) | |
| v. | ) | No. 13-CF-38 |
| | ) | |
| JEREMY R. SNELL, | ) | Honorable |
| | ) | Wm. Robin Todd, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE OVERSTREET delivered the judgment of the court.
Presiding Justice Welch and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held:*   Where the defendant, during the second stage of a postconviction proceeding, failed to make a substantial showing of a constitutional violation, and any argument to the contrary would lack merit, the defendant's appointed appellate counsel is granted leave to withdraw, and the judgment of the circuit court, dismissing the defendant's postconviction petition, is affirmed.

¶ 2    The defendant, Jeremy R. Snell, appeals from the circuit court's second-stage dismissal of his petition for postconviction relief. The defendant's appointed attorney in this appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit, and has filed a motion to withdraw as counsel on that basis. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD provided the defendant with a copy of its motion to withdraw. This court provided the defendant with ample opportunity to file a *pro se* brief, memorandum, etc., responding to OSAD's motion and explaining why his appeal has merit, but the defendant has not taken advantage of that

1

opportunity. This court has examined OSAD's motion and the entire record on appeal, and has concluded that this appeal does indeed lack merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 3                                    BACKGROUND

¶ 4     In May 2013, the State filed in the circuit court of Clay County an information charging the defendant with possession of methamphetamine (720 ILCS 646/60(a) (West 2012)). The State alleged that on May 6, 2013, he possessed less than five grams of a substance containing methamphetamine. The offense was a Class 3 felony. See *id.* § 60(b)(1).

¶ 5     In July 2013, the defendant, his appointed attorney, and an assistant state's attorney appeared before the Clay County circuit court. The defendant pleaded guilty. The court accepted the guilty plea and scheduled a sentencing hearing. However, in November 2013, the defendant, his appointed attorney, and an assistant state's attorney again appeared before the Clay County circuit court. This time, they announced that they had reached an agreement whereby the defendant would be allowed to withdraw his guilty plea and to enter into the drug-court program, which was administered by the circuit court of Effingham County. Pursuant to the parties' agreement, the court allowed the defendant to withdraw his guilty plea. A few days afterward, the Effingham County circuit court admitted the defendant into the drug-court program—both in the instant Clay County case and in a separate and unrelated Clay County case, No. 2011-CF-20. Subsequently, the instant case and No. 2011-CF-20 were always handled together.

¶ 6     In October 2014, the State filed a petition to revoke the defendant's participation in the drug-court program, in both the instant case and in No. 2011-CF-20. Later that same month, the defendant, his appointed attorney, and an assistant state's attorney appeared before the Clay County circuit court. The defendant admitted the various allegations contained in the State's

2

petition to revoke. After thoroughly admonishing and questioning the defendant, the court accepted the defendant's admission and revoked his participation in the drug-court program. The court ordered the preparation of a presentence investigation report.

¶ 7    On December 15, 2014, the defendant, his appointed attorney, and an assistant state's attorney appeared before the Clay County circuit court and announced that they had reached an agreement as to sentencing. Under the terms of their agreement, the defendant would be sentenced to imprisonment for seven years, followed by two years of mandatory supervised release (MSR), in No. 2011-CF-20, and he would be sentenced to imprisonment for four years, followed by one year of MSR, in the instant case, and the two prison sentences would run consecutively, as mandated by statute. (The assistant state's attorney mentioned that the defendant committed the instant offense, possession of methamphetamine, while out on bond in No. 2011-CF-20.) Defense counsel stated that the defendant would receive presentencing credit that "would total up to 297 actual days served." In response to a query from the court, defense counsel and the prosecutor stated that the defendant would receive 297 days of credit in No. 2011-CF-20 and 288 days of credit in the instant case. The court, after admonishing and questioning the defendant about the possible sentences and the sentencing agreement, imposed the agreed-upon consecutive prison sentences. The record is not entirely clear as to whether the stated presentencing credits were part of the plea agreement itself or whether the attorneys were simply trying to help the court to determine the credit.

¶ 8    The court entered a written judgment in each of the two cases. The judgment in No. 2011-CF-20 reflected the seven-year sentence in that case, and it listed the dates on which the defendant had been held in custody on that case and for which he was to receive presentencing credit. The days in custody in No. 2011-CF-20 totalled to 308 days, and the total was noted in the written

3

judgment. The judgment in the instant case reflected the four-year sentence in this case, and it listed the dates on which the defendant had been held in custody on this case and for which he was to receive presentencing credit. The days in custody in the instant case totalled to 308 days, and the total was noted in the written judgment. There was a great deal of overlap between the days in presentencing custody in No. 2011-CF-20 and the days in presentencing custody in the instant case. Of the 308 days that the defendant spent in presentencing custody in No. 11-CF-20, he was simultaneously in presentencing custody in the instant case for 287 of those.

¶ 9 On November 19, 2015, the defendant filed a *pro se* petition for postconviction relief. The defendant claimed that (1) he did not receive the benefit of his bargain with the State and (2) his attorney provided constitutionally ineffective assistance. The defendant alleged that at the time he pleaded guilty, he "believed that, just as years in prison are added together for purposes of consecutive sentences, that the jail credits would be added together as well," and he further alleged that his attorney never advised him that he would not receive presentencing credit equal to the combined total of his presentencing credits in the instant case and in No. 2011-CF-20.

¶ 10 The circuit court found that the defendant had stated the gist of a constitutional claim, and it appointed postconviction counsel for him. Postconviction counsel chose not to file an amended postconviction petition. She did file a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). The State filed a motion to dismiss the defendant's postconviction petition. At a hearing on the State's motion to dismiss, the defendant withdrew his ineffective-assistance claim; he proceeded on the benefit-of-the-bargain claim only. On September 13, 2016, the court entered a written order granting the State's motion and dismissing the postconviction petition. The defendant filed a timely notice of appeal from this order, thus perfecting the instant appeal.

4

¶ 11                                    ANALYSIS

¶ 12    As previously mentioned, OSAD has filed a *Finley* motion to withdraw as the defendant's counsel on appeal.  In its motion, OSAD identifies one potential issue—whether the circuit court erred in dismissing the defendant's postconviction petition at the second stage of postconviction proceedings.  The defendant has not filed a *pro se* brief, memorandum, etc., in response to OSAD's motion.  However, in his postconviction petition, the defendant wrote that "his situation is virtually identical to that of the [d]efendant in *People v. McDermott*, 2014 IL App (4th) 120655, and thus he is entitled to relief."

¶ 13    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a remedy for any incarcerated defendant who has suffered a substantial violation of his constitutional rights during the proceedings that resulted in his conviction.  725 ILCS 5/122-1(a) (West 2016).  A postconviction proceeding has three stages.  See generally *People v. Gaultney*, 174 Ill. 2d 410, 418-19 (1996).  Where the circuit court does not summarily dismiss a postconviction petition at the first stage of the proceeding, the petition advances to the second stage.  *Id.* at 418.  At the second stage, the State may file a motion to dismiss the postconviction petition.  725 ILCS 5/122-5 (West 2016).  The defendant has the burden of making a substantial showing of a constitutional violation.  *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).  The circuit court must examine the postconviction petition and any accompanying documentation; it must take as true all of the defendant's well-pleaded factual allegations, unless the record positively rebuts them; and it must determine whether the defendant made the requisite substantial showing of a constitutional violation.  *Pendleton*, 223 Ill. 2d at 473; *People v. Edwards*, 197 Ill. 2d 239, 246 (2001).  If the court determines that the defendant made a substantial showing, the postconviction petition advances to the third stage of postconviction proceedings, but if the court determines that

he failed to make a substantial showing, the court must dismiss the petition. *Edwards*, 197 Ill. 2d at 246. The dismissal of a postconviction petition at the second stage of proceedings is reviewed *de novo*. *People v. Childress*, 191 Ill. 2d 168, 174 (2000).

¶ 14 Here, the defendant claimed in his postconviction petition that he had been deprived of the benefit of his sentencing bargain with the State because he had not been granted presentencing credit equal to the *combined* total of his presentencing credit in No. 2011-CF-20—308 days—and his presentencing credit in the instant case—287 days—even though, as explained *supra*, those two sets of days in custody largely overlapped. The defendant insisted that his sentencing bargain with the State included a provision that he would indeed receive presentencing credit for the combined total, *i.e.*, for 595 days. Essentially, the defendant sought two days of presentencing credit for each day that he spent in custody on both of his cases simultaneously.

¶ 15 In the context of a fully negotiated guilty plea, a defendant certainly may present and pursue a postconviction claim that he was denied the benefit of his bargain with the State, in violation of his due process rights. See, *e.g.*, *People v. Whitfield*, 217 Ill. 2d 177 (2005) (due process violated where defendant was denied the benefit of his plea bargain with the State). In the instant case, there was no plea agreement; the defendant pleaded guilty without an agreement. However, the defendant and the State, postplea, did form an agreement as to sentencing, and the application of a benefit-of-the-bargain analysis does not seem inappropriate in this context.

¶ 16 Ordinarily, a defendant who is sentenced to consecutive terms of imprisonment is entitled to receive only one day of presentencing credit for each day that he actually spent in custody as a result of the offenses for which he was ultimately sentenced. Section 5-8-4(g) of the Unified Code of Corrections requires the Department of Corrections to treat consecutive sentences as a "single term" of imprisonment, and it specifies that an offender "shall be awarded credit against the

6

aggregate maximum term and the aggregate minimum term of imprisonment for all time served in an institution since the commission of the offense or offenses and as a consequence thereof." 730 ILCS 5/5-8-4(g) (West 2018). This statutory language was operative at all times relevant to this case. Since the instant defendant's consecutive sentences are to be treated as a single term for the purpose of calculating presentencing credit, it follows that he should receive only one day of presentencing credit for each day that he actually spent in custody as a result of his offenses; if he were to receive two days of credit for each day actually spent in custody, he would receive an impermissible double credit. See *People v. Latona*, 184 Ill. 2d 260, 271 (1998) (defendant sentenced to consecutive prison sentences was statutorily entitled to only one day of presentencing credit for each day that he actually spent in custody as a result of his offenses).

¶ 17    In his postconviction petition, the defendant did not disagree with the general principle that a defendant sentenced to consecutive prison terms should receive only one day of presentencing credit for each day that he actually spent in custody as a result of his offenses. Instead, the defendant insisted that his sentencing agreement with the State included a provision that he would receive a double credit, putting him in the same position as the defendant in *People v. McDermott*, 2014 IL App (4th) 120655, and thus entitling him to the double credit.

¶ 18    In *McDermott*, as the Appellate Court, Fourth District, emphasized in its opinion, the defendant therein and the State had agreed that the defendant would receive a particular number of days of presentencing credit against his agreed-upon prison sentence. The number was stated in open court at a guilty-plea hearing, and the defendant's plea counsel stressed that the credit in the stated amount was part of the parties' plea agreement. The Appellate Court concluded that the defendant should receive the agreed-upon presentencing credit, for the simple reason that it was part of the plea bargain, notwithstanding the fact that the agreed-upon credit was contrary to the

general rule that a defendant sentenced to consecutive prison sentences should receive only one day of presentencing credit for each day that he actually spent in custody as a result of his offenses. *McDermott*, 2014 IL App (4th) 120655, ¶¶ 27, 30.

¶ 19 The instant defendant is definitely not in the same position as the defendant in *McDermott*. At the defendant's December 15, 2014, sentencing hearing, the defendant's attorney, the assistant state's attorney, and the court discussed presentencing credit and the amount of credit to which the defendant was entitled in the instant case and in No. 2011-CF-20. However, the record is not at all clear on whether the amounts of the credits were part of the parties' sentencing agreement. More importantly, nothing in the record suggests that the parties had agreed to a departure from the general rule that a defendant sentenced to consecutive sentences is entitled to receive only one day of presentencing credit for each day that he actually spent in custody as a result of his offenses. In his postconviction petition, the defendant stated that he "believed" that he would receive presentencing credit equal to the combined total of his presentencing credits in the instant case and No. 2011-CF-20 (despite the great overlap of days in custody in the two cases). The record makes clear that this issue was not even raised at the sentencing hearing. It was not raised at any time prior to the filing of the postconviction petition, 11 months after the sentencing.

¶ 20                           CONCLUSION

¶ 21 The defendant failed to make a substantial showing that he had been deprived of the benefit of his sentencing bargain with the State. Any argument to the contrary would lack merit. Although the defendant asserted in his postconviction petition that he "believed" that the sentencing agreement included a provision that he would receive presentencing credit equal to the combined total of his credits in the instant case and in No. 2011-CF-20, there was nothing to support that bald assertion. At the sentencing hearing, there was no mention of such a provision, or anything

8

like it.  If the parties had intended to depart from the general rule against double credit, they surely would have mentioned, and emphasized, that point.  Accordingly, OSAD is granted leave to withdraw as the defendant's court-appointed counsel, and the circuit court's judgment, dismissing the defendant's postconviction petition at the second stage of proceedings, is affirmed.

¶ 22    Motion granted; judgment affirmed.